# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) )  NOLAN OTTO DEWALL, ) AMANDA SUE DEWALL, ) ) Debtor. ) ------------------------------------------------------) HAROLD SORENSEN, ) JULIE SORENSEN, ) ) Plaintiff, ) ) vs. ) ) NOLAN OTTO DEWALL, ) ) Defendant. ) | Bankruptcy No. 21-00657  Adversary No. 21-09028 |

## CORRECTED RULING ON MOTION TO DISMISS THE ADVERSARY COMPLAINT

This matter came before the Court by telephonic hearing on December 17, 2021. Kevin Ahrenholz appeared for Plaintiffs Harold & Julie Sorensen ("Plaintiffs"). Samantha Kuntz appeared for Debtor-Defendant Nolan Otto DeWall ("Defendant"). The Court took the matter under advisement on the previously submitted record. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## STATEMENT OF THE CASE

Plaintiffs and Defendant were shareholders of Voorhies Grain, Inc. ("Voorhies"), a grain elevator in Black Hawk County. Plaintiffs hired Defendant as the Manager of Voorhies. Over time, Defendant's role as the manager of Voorhies increased his status as a shareholder of the company. Defendant eventually oversaw virtually all day-to-day operations of Voorhies. Defendant secured additional financing from GNB Bank ("GNB") in Grundy Center, which was personally guaranteed by Plaintiffs. Plaintiffs allege fraudulent conduct on Defendant's part that gives rise to this matter determining the dischargeability of Defendant's debt.

Plaintiffs brought a four-count complaint challenging the dischargeability of Defendant's debt under 11 U.S.C. § 523(a)(2)(A), (a)(2)(B), (a)(4) and (a)(6). Defendant filed a Motion to Dismiss (the "Motion") arguing that each of Plaintiffs' four counts must fail. For the following reasons, the Court finds that the Defendant's Motion to Dismiss should be denied on all counts.

## BACKGROUND

Plaintiffs were shareholders of Voorhies. Plaintiffs hired Defendant to act as a manager of the daily operations of Voorhies, and Defendant was given shares of Voorhies in conjunction with this employment. As Defendant's employment progressed, Plaintiffs' involvement in Voorhies became more passive. Defendant

2

came to oversee virtually all the daily operations of the company. Defendant's increased managerial duties also led to an increase in his status as a shareholder of Voorhies.

In order to fund the operations of Voorhies, Defendant secured financing from GNB in the amount of two loans. The first loan was for $6 million on November 3, 2016, and the second was for $2.5 million on October 26, 2017. Plaintiffs personally guaranteed both loans to secure the financing. Plaintiffs allege that Defendant intentionally and knowingly made false representations regarding the inventory, collateral position, and financial status of Voorhies to both GNB and Plaintiffs in order to secure this financing.

Specifically, Plaintiffs allege that Defendant presented false and counterfeit grain warehouse receipts that fraudulently overrepresented the amount of grain inventory available for use as collateral. Plaintiffs further allege that Defendant presented false information for the preparation of fraudulent financial statements and financial documentation relied upon by GNB and Plaintiffs.

Plaintiffs claim that Defendant intentionally misrepresented both the quantity and the quality of Voorhies's inventory, grain, and chemicals. Plaintiffs further allege that Defendant lost chemical inventory worth $500,000, which reduced the value of the collateral for the financing and caused them harm. Defendant also allegedly overstated significant amounts of grain inventory that

was missing or in transit and unaccounted for.  Further, Defendant allegedly misrepresented to GNB that several grain bins contained exclusively bean crop when the truth was that the bins contained a mixture of corn and bean crop.  This assertion effectively overstated the value of the inventory.  The mixture of the corn and bean crop resulted in spoilage, which Defendant also underreported to Plaintiffs' detriment.

As a result of this alleged fraudulent conduct, GNB filed a claim with its insurer on June 26, 2019.  GNB later proved to its bond company that Defendant engaged in fraud and recovered $1.5 million on its claim.  It applied $1,160,502.65 of that money to the debt owed.  The principal balance remains $2,069,720.84 even after additional sales of Voorhies collateral.  GNB sought payment from Plaintiffs as the personal guarantors of the two promissory notes.  Plaintiffs made an interest payment of $80,837.85 to GNB on June 30, 2020.  The loan continues to accrue interest at 4.25 percent.

Defendant filed his voluntary Chapter 12 petition on July 20, 2021.  Plaintiffs brought this suit against Defendant seeking determination of the dischargeability of Defendant's debt.  Defendant then filed the Motion before this Court.

## DISCUSSION

Federal Rule of Bankruptcy Procedure 7012 incorporates Federal Rule of Civil Procedure 12(b)–(i) for use in adversary proceedings. Rule 12(b)(6) provides that a defendant may seek to dismiss a complaint when the complaint fails to state a claim upon which relief can be granted. The Supreme Court articulated the analysis for considering a 12(b)(6) Motion to Dismiss in Ashcroft v. Iqbal. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). There, the Court held:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Id.; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). Mere recitals are not sufficient to survive a Motion to Dismiss, but where a claim is supported by sufficient factual evidence, it will survive a Motion to Dismiss. Iqbal, 556 U.S. at 678–79. In order to survive a Motion to Dismiss, Plaintiffs must state a claim with sufficient factual evidence that is facially plausible. Id. Legal conclusions alone are not enough to survive a Motion to Dismiss; they must be supported by factual allegations. Id.

In pleading claims involving fraud or mistake, Rule 9(b) sets forth the applicable standard: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. Pro. 9(b); see also Fed. R. Bankr. Pro. 7009 (incorporating this Rule in the bankruptcy context). This Rule "must still be read in light of the liberal pleading requirement of Rule 8." Glidepath Holding B.V. v. Spherion Corp., 590 F. Supp. 2d 435, 451 (S.D.N.Y. 2007). Defendant argues Plaintiffs fail to satisfy the applicable requirements. The Court will address each Count in turn.

I.  **Counts I and II: False Pretenses, Representations, Actual Fraud, and Statements in Writing**

Defendant's Motion argues that Plaintiffs' Counts I and II do not allege sufficient facts to meet the Iqbal standard. "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned . . . accusation." Iqbal, 556 U.S. at 677–78. In order to survive Defendant's Motion, Plaintiffs' claims must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Defendant's counsel conceded at the telephonic hearing that a set of facts could exist under which Plaintiffs would be entitled to relief on these Counts. This Court agrees and finds that Plaintiffs' factual

6

allegations could warrant relief under § 523(a)(2)(A) and (a)(2)(B). Accordingly, Plaintiffs' Counts I and II are sufficiently pled and survive Defendant's Motion.

**II.  Count III: Fraud or Defalcation While Acting in a Fiduciary Capacity**

Section 523(a)(4) of the Bankruptcy Code governs the exception to discharge at issue in Plaintiffs' Count III: "A discharge . . . does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . ." 11 U.S.C. § 523(a)(4). It is well-established that the reference to "fiduciar[ies]" in this section of the Bankruptcy Code applies **only** to trustees of express trusts. In re Long, 774 F.2d 875, 878 (8th Cir. 1985). Long ultimately declined to impose fiduciary duties on the debtor in that case, a stockholder-employee of a corporation. Id. It held that the Code generally limits fiduciary duties to "the special contexts in which the doctrine arose." Id. The Eighth Circuit recognized, however, that individuals, by virtue of their corporate officer status, may be imputed fiduciary duties under the Bankruptcy Code. See id. (citing In re Interstate Agency, Inc., 760 F.2d 121, 124–25 (6th Cir. 1985); Matter of Whitlock, 449 F.Supp. 1383, 1390 (W.D. Mo. 1978)).

Long held that the fiduciary duties under Minnesota law that attach to corporate officers still generally apply in the bankruptcy context, just not as against third-party creditors. Long, 774 F.2d at 878 n.3 ("We are aware that many states . . . statutorily define a corporate officer as a fiduciary with respect to the corporation

7

and its shareholders. . . . This is different, however, from making officers fiduciaries with respect to third party creditors. . . .") (citation omitted). In Long, the plaintiff argued corporate fiduciary duties apply to an officer against a third-party creditor. The Eighth Circuit declined to apply those duties absent a local rule that established such a relationship. See id. at 878.

This case is distinguishable from Long. Plaintiffs are not third-party creditors of Defendant. They were co-shareholders, together with Defendant, of Voorhies. The fiduciary relationship between a corporate officer, such as Defendant, and "the company and its shareholders" has long been recognized at Iowa law. See Cookies Food Prods., Inc., by Rowedder v. Lakes Warehouse Distrib., Inc., 430 N.W.2d 447, 451 (Iowa 1988). The fiduciary duties for corporate officers therefore apply to Plaintiffs in the present case.

Plaintiffs have also pled sufficient facts to comply with the Rule 9(b) standard. Plaintiffs allege several specific factual instances that may warrant relief under 11 U.S.C. § 523(a)(4). These include false statements and writings from Defendant to GNB and Plaintiffs regarding Voorhies's collateral quantity and quality, fraudulent conduct involving the mixture of the bean and corn crop, subsequent misrepresentation and spoilage of the mixed crop, and fraudulent underreporting of the spoilage. Plaintiffs also allege GNB independently concluded that Defendant had defrauded GNB and convinced its insurer of

8

Defendant's fraud. This pleading is sufficient and Plaintiffs' Count III survives Defendant's Motion to Dismiss.

**III.  Count IV: Willful and Malicious Injury by the Debtor**

Count IV relies on § 523(a)(6), which states: "A discharge . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ." 11 U.S.C. § 523(a)(6). "Willful" and "malicious" are two distinct elements, each of which must be proven to warrant relief under § 523(a)(6). In re Scarborough, 171 F.3d 638, 641 (8th Cir. 1999). The "willful" element requires a deliberate injury and not just a deliberate act that results in injury. Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998). To be "willful," the conduct must be that of an intentional tort. In re Waugh, 95 F.3d 706, 711 (8th Cir. 1996). The "malicious" element is satisfied upon a showing that the defendant's conduct was "certain or almost certain to cause . . . harm" to the plaintiff. In re Miera, 926 F.2d 741, 743–44 (8th Cir. 1991) (citing Long, 774 F.2d at 881).

Here, Plaintiffs allege that Defendant intentionally and knowingly committed fraud, which Defendant knew would harm them. Because Plaintiffs have alleged sufficient facts that could warrant a finding of such fraud (Defendant's counsel acknowledged as much in the telephonic

9

hearing), and fraud is an intentional tort, the "willful" element of § 523(a)(6) has been sufficiently pled to survive Defendant's Motion.

Plaintiffs must also establish the "malicious" element under § 523(a)(6). Rule 9(b) provides that "[m]alice . . . and other conditions of a person's mind may be alleged generally." Fed. R. Civ. Pro. 9(b). This Court has previously held that a court may also "look at the likelihood of harm in an objective sense to evaluate [a defendant's] intent in finding malice," not only to the subjective intent of the defendant. In re Dawson, 264 B.R. 13, 17 (Bankr. N.D. Iowa 2001) (citing Long, 774 F.2d at 881). The objective likelihood of harm to Plaintiffs here supports a finding that "the conduct was certain or almost certain to cause . . . harm." Id. (citing Geiger, 523 U.S. at 62).

Plaintiffs allege Defendant knowingly and intentionally misrepresented the quantity and quality of inventory collateral to induce GNB to provide, and Plaintiffs to guarantee, financing for Voorhies's operations. Plaintiffs allege facts sufficient to support such a finding. These facts include allegations about the mixture and spoilage of corn and bean crop, the overreporting of grain inventory collateral which was missing and lost in transit, and the loss of $500,000 in chemical inventory. Plaintiffs personally guaranteed the promissory notes for the two loans amounting to a

10

total $8.5 million of debt based on those false statements. Altogether, this sufficiently pleads a case with an objective likelihood that Defendant's fraudulent conduct would result in harm to the Plaintiffs.

Defendant argues his conduct could not rise to the level of willful or malicious as required by § 523(a)(6) because any harm to the Plaintiffs would also result in harm to himself as a shareholder. This argument is without merit. As an employee of Voorhies, Defendant had every interest in Voorhies continuing its business operations. Given that Plaintiffs—not Defendant—personally guaranteed the promissory notes on the GNB loans, Defendant had nothing to lose and everything to gain from the alleged fraudulent conduct. Accordingly, Count IV has been sufficiently pled to survive Defendant's Motion to Dismiss.

For the foregoing reasons, the Court finds that all four of Plaintiffs' Counts are sufficiently pled as a matter of law and that Defendant's Motion to Dismiss should be denied.

### CONCLUSION

Defendant's Motion to Dismiss is therefore **DENIED**.

Dated and Entered:

March 30, 2022

THAD J. COLLINS,
CHIEF BANKRUPTCY JUDGE

11